UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

**Mary Frangesh,**  Civil No. 06-4951 (DWF/SRN)

    **Plaintiff,**

    v.  **REPORT AND RECOMMENDATION**

**John E. Potter, Postmaster General,**

    **Defendant.**

---

Mary Frangesh, pro se

Mary L. Trippler, Assistant United States Attorney, United States Courthouse, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415, for Defendant

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-captioned case comes before the undersigned United States Magistrate Judge on Defendant John E. Potter's Motion to Dismiss or for Summary Judgment (Doc. No. 18). This matter has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.

**I.  BACKGROUND**

    **A.  The Allegations in the Amended Complaint**

Plaintiff Mary Frangesh commenced this action on December 19, 2006, and filed an Amended Complaint on January 22, 2007. In the Amended Complaint, she alleges that a coworker and union steward, Valerie Fredrickson, questioned her about her religion and caused the union to harass her for her religious beliefs.[1]  Plaintiff also claims she was disciplined several

---

[1] Plaintiff was a member of the National Rural Letter Carriers Association (NRLCA).

times by her manager, Ginny Avoles, as a pretext for religious discrimination. Plaintiff further asserts that she was required to work more than twelve hours a day, which was a violation of her union contract, yet Ms. Fredrickson did nothing about it. Based on these allegations, Plaintiff brings claims for religious discrimination, hostile work environment, breach of a collective bargaining agreement, negligent supervision, and worker's compensation violations.

### B. Facts of Record

Plaintiff began working at the United States Postal Service (USPS) in January 2001. At the time of the underlying events in this case, Plaintiff worked as a part-time rural carrier in the Apple Valley, Minnesota branch. (Doc. No. 22 (EEOC Admin. R.) at 205.) Plaintiff is a Christian. (Id. at 33.) NRLCA union steward Valerie Fredrickson first learned of Plaintiff's religion in the fall of 2004 when she overheard Plaintiff tell a coworker that Plaintiff was studying to become a minister and missionary. (Id. at 193.) About two weeks later, Ms. Fredrickson mentioned to Plaintiff that she had attended Bible study school. (Id. at 193-94.) Ms. Fredrickson learned that she and Plaintiff shared the same religious beliefs and attended similar churches. (Id. at 194.)

On June 16, 2005, Plaintiff was issued a warning letter for failing to maintain a regular work schedule, as required by her union contract and USPS regulations. (Id. at 206.) On July 27, 2005, Plaintiff was instructed to stop curtailing mail.[2] (Id. at 211.) The next day, Plaintiff was told to leave the post office by 1:00 p.m. to begin her delivery route, not to curtail any mail, and to return to the post office by 4:30 p.m. (Id. at 4-5, 205, 211.) However, she left for her

---

[2] A carrier curtails mail when he or she purposefully leaves mail at the post office instead of delivering it to the customer, which results in a delay in the receipt of the mail. (Doc. No. 22 (EEOC Admin. R.) at 143.)

route at 2:30 p.m., curtailed the mail, and did not return to the post office until 8:30 p.m. (Id. at 205.) On July 30, 2005, Plaintiff was again directly ordered to abide by the above timeline, and she again failed to do so. (Id.) Plaintiff did not provide a satisfactory explanation for her conduct. (Id.)

On August 8, 2005, USPS manager Ginny Avoles issued Plaintiff a "Notice of 7-Day No-Time-Off Suspension" for failing to obey a direct order and curtailing mail. (Id. at 142, 205-07.) This type of suspension notice does not actually require the employee to serve time off, but it carries the same degree of seriousness as if the employee had served time off without pay. (Id. at 206-07.) The union filed a grievance on Plaintiff's behalf, and a union representative met with USPS on August 13, 2005. (Id. at 218.) The result of the meeting was that the notice of suspension was reduced to a warning letter, which would be removed from Plaintiff's personnel file in nine months. (Id. at 5, 218.)

In October 2005, Plaintiff completed a grievance form asserting that she had been required to work more than twelve hours a day and specifying October 8, 2005 as the date of the incident. (Id. at 93.) On October 12, 2005, Plaintiff filed a formal complaint with the Equal Employment Opportunity Commission (EEOC), alleging religious discrimination and a hostile work environment based on religion. (Id. at 22.) Plaintiff claimed that Ms. Fredrickson and Ms. Avoles discriminated against her by issuing the notice of suspension. (Id. at 32.)

During the EEOC investigation, Ms. Avoles said she knew nothing of Plaintiff's religion until after Plaintiff filed the EEOC complaint. (Id. at 34-35.) Ms. Avoles also said that Plaintiff was disciplined for her behavior and job performance, not her religious beliefs. (Id. at 35, 36.) Ms. Fredrickson told the EEOC investigator that she was merely a carrier at the Apple Valley

post office and had no supervisory duties or involvement with USPS's decision to suspend Plaintiff. (Id. at 193.) Ms. Fredrickson denied Plaintiff's allegation that she had encouraged Ms. Avoles to discipline Plaintiff, and she did not even know about the notice of suspension until Plaintiff said she wanted to file a grievance. (Id. at 193, 195.) On the other hand, Ms. Fredrickson knew that Plaintiff was having difficulty completing her job duties, and in her capacity as union steward, Ms. Fredrickson offered Plaintiff assistance, which Plaintiff refused. (Id. at 194-95.) Ms. Fredrickson was the union representative responsible for persuading USPS to reduce the notice of suspension to a letter of warning. (Id. at 195.)

After the EEOC investigation, an administrative judge assessed Plaintiff's complaint and found that the claim of religious discrimination failed because Plaintiff was not performing to USPS's legitimate expectations and was curtailing mail. (Id. at 6.) The administrative judge concluded that the discipline imposed was justified. (Id.) The administrative judge found that the discipline was not an adverse employment action, however, because it did not involve any decrease in wages or loss of title or benefits. (Id.) Lastly, the administrative judge observed that Plaintiff had absolutely no evidence that she was disciplined because of her religious beliefs. (Id.) Indeed, USPS management was unaware of Plaintiff's religious beliefs until Plaintiff filed her EEOC claim. (Id.)

Plaintiff filed suit in federal court on December 19, 2006, and amended her Complaint on January 22, 2007. Defendant brought the instant motion on August 31, 2007. Plaintiff has not responded to the motion.

**II.     DISCUSSION**

Defendant moves to dismiss this case under Federal Rule of Civil Procedure 12(b)(1) and

12(b)(6), and in the alternative, for summary judgment under Rule 56. A party must file a motion asserting any of the seven defenses listed in Rule 12 before he or she files a responsive pleading. Fed. R. Civ. P. 12(b) ("A motion making any of these defenses shall be made before pleading if a further pleading is permitted."). Defendant filed an Answer in this case on April 11, 2007. Consequently, he is precluded from bringing a Rule 12 motion, and the Court will treat the motion as one for summary judgment, under Rule 56. See County of Mille Lacs v. Benjamin, 262 F. Supp. 2d 990, 994 (D. Minn. 2003).

### A.     Standard of Review for Summary Judgment

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. A non-moving party cannot rely on the "mere existence of some alleged factual dispute between the parties [to] defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

"[R]egardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden is on the moving party to show "that there is an absence of evidence to support the nonmoving party's case." Id. at 325. The nonmoving party must then "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate

'specific facts showing that there is a genuine issue for trial.'" Id. at 324. Thus, a non-moving party cannot simply rely on assertions made in the pleadings to avoid summary judgment. E.g., Krein v. DBA Corp., 327 F.3d 723, 726 (8th Cir. 2003). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," then Rule 56 requires the entry of summary judgment in favor of the moving party. Celotex, 477 U.S. at 322-23 accord Reed v. Woodruff County, 7 F.3d 808, 810 (8th Cir. 1993). All evidence will be viewed in the light most favorable to the nonmoving party. E.g., Vette Co. v. Aetna Cas. & Surety Co., 612 F.2d 1076, 1077 (8th Cir. 1980).

      **B.    Plaintiff's Religious Discrimination Claim**

Plaintiff alleges that she was treated differently from other employees because of her religion. To establish a prima facie case of religious discrimination based on disparate treatment, a plaintiff must show that she was treated less favorably than her coworkers because of her religious beliefs. Mann v. Frank, 7 F.3d 1365, 1370 (8th Cir. 1993). The plaintiff must establish that she is a member of a protected class and compare her treatment to that of a similarly situated employee in a non-protected class. Id.

> The elements of a prima facie case of disparate treatment because of religion are: (1) the plaintiff was a member of a protected class because of the plaintiff's religious affiliation or beliefs; (2) the employee informed the employer of his religious beliefs; (3) the plaintiff was qualified for the position; (4) despite the plaintiff's qualifications, the plaintiff was fired or suffered an adverse employment action; and (5) similarly situated employees outside of the plaintiff's protected class were treated differently or there is other evidence giving rise to an inference of discrimination.

Brasch v. Peters, 479 F. Supp. 2d 1045, 1064 (E.D. Mo. 2007) (citing Vetter v. Farmland Indus., Inc., 884 F. Supp. 1287, 1302 (N.D. Iowa 1995)).

If the plaintiff meets her prima facie burden, the burden shifts to the employer to show a legitimate, nondiscriminatory reason for the action. Id. "The burden then shifts back to the plaintiff to present evidence . . . which creates a fact issue as to whether the employer's proffered reasons are mere pretext for illegal discrimination" and also evidence creating "a reasonable inference that the adverse employment decision was an act of intentional discrimination." Id. (citing Rothmeier v. Inv. Advisers, Inc., 85 F.3d 1328, 1334 (8th Cir. 1996)).

Here, Plaintiff has not established at least three elements of her prima facie case. First, the record before the Court does not establish that Plaintiff suffered an adverse employment action. "Not everything that makes an employee unhappy is an actionable adverse employment action." LaCroix v. Sears, Roebuck, & Co., 240 F.3d 688, 690 (8th Cir. 2001) (citation omitted). "Rather, an adverse employment action is exhibited by a material employment disadvantage, such as a change in salary, benefits, or responsibilities." Id. (citation omitted). Plaintiff suffered no change in her position, title, salary, or any other material aspect of employment. She merely received a notice of suspension, which was ultimately reduced to a letter of warning. A disciplinary warning is not actionable unless it results in a "material employment disadvantage." Id. at 692 (finding that a "memorandum of deficiency" was not an adverse employment action). To the extent Plaintiff claims that she received more direct orders and supervision than other carriers, such minor changes in working conditions do not constitute material employment disadvantages. See Kerns v. Capital Graphics, Inc., 178 F.3d 1011, 1017 (8th Cir. 1999).

Likewise, there is no evidence that Plaintiff informed her employer of her religious beliefs. Although Plaintiff told Ms. Fredrickson that she was a Christian in the fall of 2004, Ms. Fredrickson was a union steward and co-worker, not a manager or decision maker. Moreover,

7

there is no evidence that Ms. Fredrickson shared that information with Plaintiff's manager, Ms. Avoles, or anyone else at USPS. Ms. Avoles knew nothing of Plaintiff's religion until after Plaintiff filed the EEOC complaint on October 12, 2005, which was after the alleged discrimination had occurred.

Finally, Plaintiff has not provided evidence of any similarly situated employee who was treated differently. Plaintiff has no evidence of the religious beliefs of other mail carriers, and she has not explained how other carriers were treated differently. Additionally, the record is devoid of any evidence from which to infer discrimination.

### B.    Plaintiff's Claim of Religious Harassment

Plaintiff claims that she was subjected to a hostile work environment because of her religion. To survive summary judgment on a hostile work environment claim, Plaintiff must show (1) she is a member of a protected class; (2) she experienced unwelcome harassment; (3) the harassment was based on a protected category under Title VII; and (4) the harassment affected a term, condition, or privilege of her employment. Al-Zubaidy v. TEK Indus.,Inc., 406 F.3d 1030, 1038 (8th Cir. 2005). The harassment "must be extreme to amount to a change in the terms and conditions of employment." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). The conduct must be both severe and pervasive, viewed objectively and subjectively. Howard v. Burns Bros., Inc., 149 F.3d 835, 840 (8th Cir. 1998). "When the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' . . . that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' . . . Title VII is violated." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal citations omitted).

Plaintiff's claim of religious harassment fails because she has not shown that she experienced unwelcome harassment based on her religion. Plaintiff has made only general allegations of harassment by Ms. Avoles and Ms. Fredrickson, but the allegations lack any evidentiary support. The discipline imposed may have been unwelcome, but it was not harassing in nature. Moreover, there is no reason to believe Plaintiff's religion was a factor in the discipline, given that Ms. Avoles did not even know of Plaintiff's religion until after the allegedly harassing conduct occurred

In addition, Plaintiff has not shown that the alleged harassment affected a term, condition, or privilege of her employment. There is no evidence of intimidation, ridicule, or insult related to Plaintiff's religion. Nor is there any conduct that could be characterized as severe or pervasive harassment, either objectively or subjectively.

### C.     Plaintiff's Claim for Breach of the Collective Bargaining Agreement

NRLCA is the exclusive bargaining representative for USPS rural letter carriers. The Minnesota Rural Letter Carrier Association (MRLCA) is the local union representing rural letter carriers in Minnesota. A nationwide collective bargaining agreement (CBA) governs the relationship between NRLCA and USPS. The CBA provides in part for a multi-step grievance procedure, which ends in binding arbitration. Plaintiff alleges that MRLCA did not fairly represent her because they threw away certain documents and did not support her in her grievance that she was required to work excessive hours on October 8, 2005.

This is a case in which an employee is suing her employer for breach of a collective bargaining agreement, and the employee is also alleging that her union did not fairly represent

her.[3]  In such cases, in order to recover from the employer, the plaintiff must prove that the employer violated the collective bargaining agreement and that the union breached its duty of fair representation in the grievance proceedings.  DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 163-65 (1983); Vaca v. Sipes, 386 U.S. 171, 185-86 (1967).  Accordingly, even though NRLCA is not a party to this case, Plaintiff must still prove that it breached its duty of fair representation to her in order to maintain her claim against USPS.  In addition to satisfying the evidentiary requirements, there is a procedural deadline for filing suit.  An employee must commence her action for a breach of a collective bargaining agreement within six months of the date on which the cause of action accrued.  DelCostello, 462 U.S. at 172.

Plaintiff's claim for breach of the CBA based on working excessive hours is untimely because she did not file her complaint within six months of the date on which this claim arose. The day on which she allegedly worked twelve hours was October 8, 2005.  Plaintiff therefore should have filed her claim by April 8, 2006.  However, she did not commence this action until December 19, 2006.  The Court cannot evaluate the timeliness of Plaintiff's claim for breach of the CBA based on the union's alleged destruction of documents because there is no date asserted in Amended Complaint or otherwise indicated in the record on which the documents were supposedly destroyed.

Plaintiff's claim for breach of the CBA fails on the merits because she has not established that MRLCA failed to fairly represent her in the grievance proceedings.  There is no evidence either that MRLCA destroyed documents or that it refused to support Plaintiff when she filed a

---

[3] NRLCA is not a party to this action, and Plaintiff's claim for breach of the collective bargaining agreement thus can only be against her employer.

grievance for working excessive hours. In order to survive summary judgment, "[a] plaintiff may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." Davidson & Assocs. v. Jung, 422 F.3d 630, 638 (8th Cir. 2005). Here, there are only unsupported and self-serving allegations in the record to support Plaintiff's contention that MRLCA did not fairly represent her.

### D. Plaintiff's Worker's Compensation Claim

The Federal Employees' Compensation Act (FECA), 5 U.S.C. § 8101 et seq., establishes the worker's compensation scheme for federal employees. The Secretary of Labor decides whether FECA covers an injury and the amount to be compensated, and there is no judicial review of any kind. 5 U.S.C. § 8128(b)(2); see Lindahl v. Office of Pers. Mgmt., 470 U.S. 768, 780 & n.13 (1985); Brumley v. United States Dept. of Labor, 28 F.3d 746, 747-48 (8th Cir. 1994). Not only is the record absent of any evidence that Plaintiff sought relief under FECA, but even if she had, the Secretary of Labor's decision would not be reviewable by this Court. Accordingly, Plaintiff's worker's compensation claim fails for lack of subject matter jurisdiction. See Sw. Marine, Inc. v. Gizoni, 502 U.S. 81, 90 (1991); Brumley, 28 F.3d at 748.

### E. Negligence

Plaintiff has brought at least one negligence claim, for negligent supervision. Tort claims against the United States or one of its agencies, such as USPS, must be brought under the Federal Tort Claims Act (FTCA). See 28 U.S.C. §§ 1346(b), 2674. Before proceeding under the FTCA, a plaintiff must have presented her claim to the appropriate agency, and the agency must have denied the claim. 28 U.S.C. § 2675(a). The plaintiff must also have presented the

claim in writing to the agency within two years of the date on which the action accrued. 28 U.S.C. § 2401(b). Absent compliance with this administrative exhaustion requirement, a court lacks subject matter jurisdiction over the claim. McNeil v. United States, 508 U.S. 106, 112 (1993).

In this case, there is no record that Plaintiff ever presented a negligence-based claim to USPS, and the two-year limitations period has run. The Court therefore lacks subject matter jurisdiction over any such claims.

### III. CONCLUSION

Defendant should be granted summary judgment on all of Plaintiff's claims. Plaintiff has not identified any evidence in the record to support her claims, and the Court has independently determined that there is none. In addition, the Court lacks subject matter jurisdiction over Plaintiff's worker's compensation and negligence claims.

Based on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant John E. Potter's Motion for Summary Judgment (Doc. No. 18) be **GRANTED** and this case be **DISMISSED WITH PREJUDICE**.

Dated: October 19, 2007

    s/ Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **November 6, 2007**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the

objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within ten days after service thereof.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.